# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| ROBERT E. HOUSE, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | EP-16-CV-408-PRM |
| | § | |
| WAL-MART STORES | § | |
| TEXAS, LLC, | § | |
|     Defendant. | § | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On this day, the Court considered Defendant Wal-Mart Stores Texas, LLC's "Motion for Summary Judgment" (ECF No. 26) [hereinafter "Motion"], filed on June 6, 2017, Plaintiff Robert E. House's "Response to Defendant's Motion for Summary Judgment" (ECF No. 27) [hereinafter "Response"], filed on June 20, 2017, and Defendant's "Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment" (ECF No. 28) [hereinafter "Reply"], filed on June 27, 2017, in the above-captioned cause. After due consideration, the Court is of the opinion that Defendant's Motion should be granted for the reasons set forth below.

# I. FACTUAL AND PROCEDURAL BACKGROUND

This matter arises out of a disability discrimination lawsuit. First Am. Compl. 1, Dec. 2, 2016, ECF No. 13 [hereinafter "Amended Complaint"].

Plaintiff has been diagnosed with Type 2 diabetes and suffers from vertigo and vitiligo—a skin condition that affects the color of Plaintiff's skin and causes him to be sensitive to the sun. Mot. Ex. A, at 61–63, 65 [hereinafter "Plaintiff's Deposition"]; Resp. Ex. 1, at 1.

Defendant employed Plaintiff as a cashier, unloader, and stocker in 1998 and as a bike assembler in early 2000. Pl.'s Dep. 14–16. Defendant eventually terminated Plaintiff's employment on December 5, 2014. *Id.* at 49. During his employment with Defendant, Plaintiff received three written reprimands pursuant to Defendant's "Coaching for Improvement Policy" ("Coaching Policy"). *See* Mot. 3–4; Resp. 3.

Through Defendant's Coaching Policy, associates receive different levels of "coachings"—first, second, and third written coachings—as reprimands whenever they engage in unacceptable job performance or conduct. Pl.'s Dep. Ex. 7. Once an associate has received three written coachings within a twelve-month period, the employee is subject to

termination for further unacceptable job performance or conduct that warrants another level of coaching. *Id.*

Plaintiff received his first written coaching on December 17, 2013, for poor job performance. Pl.'s Resp. Ex. C. Specifically, Plaintiff's first written coaching form indicates that Plaintiff's performance in assembling bikes was not sufficiently productive and consistent. *Id.* Plaintiff received his second written coaching on January 25, 2014, for excessive absences. Pl.'s Resp. Ex. D. Plaintiff thereafter received his third written coaching on February 16, 2014, for an additional absence that resulted from excessive tardiness. Pl.'s Resp. Ex. E.

Plaintiff claims that although he "was taking medication to help control his condition, his diabetic episodes led him to miss time from work and to be late to work." Resp. 2. Plaintiff asserts that "[d]ue to his condition, [he] began to call in sick causing him to not produce as he normally did." *Id.* at 3. Consequently, Plaintiff claims that he received his three written coachings because of his diabetic condition. *Id.*

On July 30, 2014, several months after receiving his third written coaching, Plaintiff requested leave pursuant to the Family Medical Leave Act ("FMLA"). On that same day, Defendant informed Plaintiff

that it could not approve his FMLA request until he submitted medical documentation to support it. Mot. 4; Pl.'s Dep. Ex. 15, at 3. Plaintiff thereafter submitted the requested medical documentation, which included a "Return to Work Certification" form and a "Certification of Health Care Provider" form. Resp. Ex. J; Pl.'s Dep. Ex. 16.

The Return to Work Certification form bore both Plaintiff and his physician's signature and indicated that Plaintiff had two restrictions: climbing and seeing. Resp. Ex. J. Specifically, the Return to Work Certification indicated that Plaintiff's ability to climb varied due to vertigo and that his vision blurred occasionally. *Id.*

Plaintiff's physician also provided a Certification of Health Care Provider indicating that Plaintiff suffered from hypertension, Type 2 diabetes, stress, and sleep disorders. Pl.'s Dep. Ex. 16, at 10. In that certification, Plaintiff's physician indicated that Plaintiff's medical condition would not require that he work on a reduced schedule or part-time. *Id.* However, Plaintiff's physician did indicate that Plaintiff would experience episodic medical flare-ups periodically preventing Plaintiff from performing his job functions. *Id.* at 9–10. Plaintiff's

doctor recommended that he take time off as needed to address the flare-ups. *Id.*

On August 19, 2014, Defendant granted Plaintiff FMLA leave from July 27, 2014 through January 26, 2015. Defendant allowed Plaintiff to take leave for up to three episodes per week, with each leave period for flare-up episodes lasting up to one day, as his doctor recommended.

Plaintiff nevertheless alleges that he asked for and was denied reasonable accommodations on two occasions. Am. Compl. 2. Specifically, Plaintiff asserts that he requested an accommodation in July 2014 that would allow him to avoid working outdoors because of his vitiligo. *Id.* Plaintiff also claims that he made a second accommodation request on August 11, 2014, that he not be required to climb ladders because of his diabetes and vertigo. *Id.* Plaintiff asserts that Defendant failed to reasonably accommodate him. *Id.*

Plaintiff further claims that Defendant then began to harass him and made him work against medical restrictions. *Id.* According to Plaintiff, "[t]he acts of intimidation and consistently working Plaintiff against his medical restrictions continued until Plaintiff's termination

on December 5, 2014." *Id.* Plaintiff alleges that Defendant discriminated against him when it terminated him. *Id.*

Defendant asserts that it terminated Plaintiff on December 5, 2014, for engaging in an unsafe work practice resulting in another employee's injury. Pl.'s Dep. 49; Resp. Ex. M. The incident occurred when a fellow employee asked Plaintiff to assist her in obtaining lids that were stacked high on a shelf. Pl.'s Dep. 49–50. Plaintiff used a bicycle handle to reach the lids causing one of the lids to slip out and hit the other employee on the head. *Id.* The injured employee began to bleed from the forehead because the lid was sharp. *Id.* at 50. According to Defendant, it terminated Plaintiff because this incident merited another written coaching and Plaintiff had already received three prior coachings within the relevant twelve-month period. Mot. 7; Resp. Ex. M.

Plaintiff thereafter filed his Amended Complaint alleging the following claims pursuant to Chapter 21 of the Texas Labor Code ("Texas Commission on Human Rights Act"): (1) failure to accommodate; (2) disability discrimination; (3) disability-based harassment; and (4) retaliation. Am. Compl. 3–4.

Defendant denies each of Plaintiff's claims. *See generally* Mot.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute will be found to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Rogers v. Bromac Title Servs., LLC*, 755 F.3d 347, 350 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (internal quotation marks omitted).

"Under Federal Rule of Civil Procedure 56(c), the party moving for summary judgment bears the initial burden of . . . 'identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"Rule 56(c) mandates the entry of summary judgment . . . upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and

on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 323. Where this is the case, "there can be 'no genuine issue as to any material fact,' since complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* (quoting Fed. R. Civ. P. 56(c)).

In adjudicating a motion for summary judgment, a court "consider[s] evidence in the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in favor of that party." *Bluebonnet Hotel Ventures, LLC v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014).

## III. ANALYSIS

### A. Disability Discrimination Claim

The Texas Commission on Human Rights Act ("TCHRA") "prohibits an employer from discharging an individual . . . because of a disability." *Tex. Parks and Wildlife Dep't v. Gallacher,* No. 03-00079-CV, 2015 WL 1026473, at *3 (Tex. App.—Austin Mar. 4, 2015, no pet.) (opin. on reh'g, mem. op.) (citing Tex. Lab. Code Ann. § 21.051 (West 2015)). Plaintiff claims that Defendant discriminated against him on

the basis of his disabilities when Defendant discharged him in December 2014. Am. Compl. 2–3.

In *McDonnell Douglas Corporation v. Green*, the Supreme Court set forth the traditional burden-shifting analysis that the Court should utilize in employment discrimination cases. 411 U.S. 792, 802–03 (1973).[1]

First, "the plaintiff has the initial burden to present a prima facie case of discrimination." *Hagood v. Cty. of El Paso*, 408 S.W.3d 515, 523 (Tex. App.—El Paso 2013, no pet.) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802–03). "To establish a prima facie case of disability discrimination, a plaintiff must show that (1) he has a 'disability;' (2) he is 'qualified' for the job; and (3) he suffered an adverse employment decision because of his disability." *Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 436 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). If the plaintiff meets his "minimal" initial burden, he is "entitled to a presumption of discrimination." *Hagood*, 408 S.W.3d at 523.

---

[1] "Because one purpose of [the TCHRA] is to bring Texas law in line with federal laws addressing discrimination, federal case law may be cited for authority." *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996).

Next, "[a]ssuming the plaintiff meets his prima facie burden, the burden shifts to the employer to articulate a legitimate non-discriminatory reason" for the adverse employment decision. *Donaldson*, 495 S.W.3d at 436. "If the defendant meets this burden, the presumption of unlawful discrimination created by the plaintiff's prima facie showing is eliminated." *Hagood*, 408 S.W.3d at 523.

Finally, "[t]he burden then shifts back to the plaintiff who is left with the ultimate burden to prove that the employer's explanation notwithstanding, it engaged in intentional discrimination." *Id.* at 523–24. Namely, the plaintiff must produce evidence from which a jury could conclude that the employer's stated reason was pretextual. *Cannon v. Jacobs Field Serv.'s N. Am. Inc.*, 813 F.3d 586, 590 (5th Cir. 2016).

Here, even assuming that Plaintiff has established a prima facie case of disability discrimination, Defendant has provided a legitimate non-discriminatory reason for its alleged discriminatory action of discharging Plaintiff—engaging in an unsafe work practice. Specifically, Defendant asserts that it discharged Plaintiff in accordance with its Coaching Policy because he engaged in an unsafe work practice,

which warranted another written coaching in addition to his three previous coachings. Mot. 7; Resp. Ex. M. Consequently, the burden is on Plaintiff to prove that Defendant's reason is pretextual.

Plaintiff argues that there are two problems with his fourth and final coaching.

First, according to Plaintiff, his "training coordinator" Rose Trejo stated that Plaintiff's previous three coachings should have been cleared because of his medical issues once Defendant approved his FMLA leave. Resp. 17. Plaintiff argues that had his written coachings for absences and tardiness been cleared, only one written coaching—for lack of productivity—would have remained. *Id.* Therefore, Plaintiff contends that "[i]f Defendant followed its progressive disciplinary process correctly and Plaintiff's past coaching[s] were erased . . . then at the time of Plaintiff's unsafe work coaching Plaintiff would have been on only his second coaching and should not have been terminated." *Id.*

Plaintiff's argument is unpersuasive and not supported by the evidence. Namely, the Court agrees with Defendant that Plaintiff mischaracterizes Trejo's statement. Trejo testified as follows:

> For example, if you come and you tell me you have diabetes
> . . . and you take your paperwork to the doctor and the doctor
> says, "Oh, yes, Robert House had diabetes since April 30th,"
> so then they can go back till that date and approve all of
> those absences.

Resp. Ex. H, at 20.

Plaintiff's counsel then asked Trejo whether that would also include "getting rid" of any coachings that Plaintiff had previously received and she indicated that it would. *Id.* Therefore, as Defendant correctly asserts, "Trejo did not say Plaintiff's past absences should have been excused. She only said that *if* he had a doctor's note attributing past absences to his diabetes then they would be excused. But that did not occur." Reply 5. Significantly, Plaintiff has produced no evidence indicating that he submitted any medical documentation attributing his past absences and tardiness to his medical conditions, and he did not request FMLA leave during the period of time when he received the three written coachings related to productivity, tardiness, and absences.

Second, Plaintiff argues that he "was criticized for not using a ladder to reach the bucket lid even though using a ladder would have clearly violated his doctor's restrictions of no climbing." Resp. 17.

Plaintiff claims that "[e]ither act of getting the buckets with the handlebars or climbing the ladder were both an unsafe act that would have led to his termination." *Id.* at 18. However, Plaintiff's second argument regarding his termination similarly fails. Plaintiff admitted that he had other options, and did not have to use either a ladder or the handlebars to reach the lid.

> Q. And you could've done other things, though, right? You could've asked someone else to help get them?
> A. Yes.
> Q. Or you could've not used the handle bars to grab them?
> A. Yes.
> Q. Or you could've told her, Hey, I need a ladder and I can't get a ladder; you need to get someone else?
> A. Yes.
> Q. You didn't do any of those?
> A. No.

Pl.'s Dep. 79.

More importantly, Plaintiff's arguments regarding his past coachings fail to demonstrate that Defendant's reason for discharging Plaintiff was a pretext for discriminating against him because of his disabilities. "To establish a fact question on the issue of pretext, the non-movant must present evidence indicating that the non-discriminatory reason given by the employer is false or not credible *and*

that the real reason for the employment was *unlawful discrimination.*"
*Elgaghil v. Tarrant Cty. Junior Coll.,* 45 S.W.3d 133, 140 (Tex. App.—
Fort Worth 2000, pet. denied) (emphasis added). "[T]he United States
Supreme Court has made it clear that it is not sufficient merely to show
that the employer's reasons are false or not credible; the plaintiff must
prove that the employer discriminated intentionally." *Little v. Tex.*
*Dep't of Criminal Justice,* 177 S.W.3d 624, 632 (Tex. App.—Houston [1st
Dist.] 2005, no pet.).

Plaintiff's claim that Defendant did not properly follow its
Coaching Policy because his past absences should have been excused in
light of his disability does not create a sufficient causal nexus between
his disabilities and his termination. Plaintiff has not pointed to
evidence in the record showing that Plaintiff's written coachings, which
eventually led to his termination, were motivated by Defendant's
discriminatory animus against Plaintiff on the basis of his disability.
While his disability may or may not have caused him to be less
productive, arrive to work late, or miss work, he has not directed the
Court to evidence in the record suggesting that Defendant had
knowledge that his medical conditions caused these problems when it

14

issued Plaintiff's coachings. Accordingly, the Court concludes that Plaintiff has failed to meet his summary judgment burden and establish a fact issue as to the pretext element. Indeed, Plaintiff admitted during his deposition that he did not believe that Defendant's reason for terminating him was false:

> So due to the coachings and this and that, they—you know, they said that was another write-up. I talked to Carlos Ramirez,[2] and, you know, I told him it wasn't intentional; she didn't have to go to the hospital; nothing bad happened. And his remark was, you know, I go by the books; you know, I have to do what I have to do.

Pl.'s Dep. 50.

> Q. You don't think Carlos Ramirez made up the reason why he fired you, do you?
> A. No. Like he said, you know I go by the books.

Pl.'s Dep. 90.

Thus, the Court further concludes that no reasonable juror could find in favor of Plaintiff on his disability discrimination claim and that Defendant is entitled to summary judgment on this claim.

---

[2] Carlos Ramirez was Defendant's store manager and the individual who terminated Plaintiff. Mot. 3; Pl.'s Dep. 66, 90.

## B.  Failure to Accommodate

### 1.  First Accommodation Request

"[I]n the absence of a showing of undue hardship, the TCHRA prohibits an employer from failing or refusing to make a reasonable workplace accommodation for a known physical or mental limitation of an otherwise qualified individual with a disability who is an employment applicant or employee." *Gallacher*, 2015 WL 1026473, at *3 (citing Tex. Lab. Code Ann. § 21.128).

Plaintiff alleges that he made an accommodation request that he not work outdoors because of his skin condition in July 2014 but that Defendant denied this request.  Am. Compl. 2.  Defendant argues that Plaintiff's claim regarding this accommodation request is untimely and that that the Court is, therefore, precluded from considering it.  The Court agrees for the following reasons.

"[S]ection 21.202(a) of the TCHRA . . . obligates a claimant to file a complaint with the Texas Workforce Commission civil rights division (TWC) or the Equal Employment Opportunities Commission (EEOC) not later than the 180th day after the date an allegedly unlawful employment practice occurs." *Prairie View A & M Univ. v Chatha*, 381

S.W.3d 500, 503 (Tex. 2012). This "180-day filing requirement is a mandatory statutory requirement that must be complied with before filing suit." *Id.* "That is, failure to timely file an administrative complaint deprives . . . trial courts of subject matter jurisdiction over a subsequent claim against the employer." *In re ArcelorMittal Vinton, Inc.*, 334 S.W.3d 347, 349 (Tex. App.—El Paso 2011, orig. proceeding). "[T]he 180-day limitations period . . . begins 'when the employee is informed of the allegedly discriminatory employment decision, not when that decision comes to fruition." *DeMoranville*, 933 S.W.2d at 493.

Here, Plaintiff claims that he requested and was denied the accommodation in July 2014 but did not file his charge of discrimination regarding this accommodation request until March 6, 2015, well past the 180-deadline (even assuming that Plaintiff requested the accommodation on July 31, 2014). Resp. Ex. O. Consequently, Plaintiff's claims regarding this accommodation request are time-barred.

In response, Plaintiff argues that his claims are not time-barred under the "continuing violation" theory. Resp. 10–11. The continuing violation theory relieves a plaintiff "of establishing that all of the

alleged discriminatory conduct occurred within the actionable period, if the plaintiff can show a series of related acts, one or more of which falls within the limitations period." *Messer v. Meno*, 130 F.3d 130, 135 (5th Cir. 1997). Since the inception of the continuing violation theory, the Fifth Circuit has clarified and narrowed its scope, "consistently [holding] that the continuing violations doctrine is equitable in nature and extends the limitations period on otherwise time barred claims *only* when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004).

Additionally, in *National R.R. Passenger Corporation v. Morgan*, "[t]he Supreme Court [also] . . . clarified the limits of the continuing violation doctrine." *Id.* (discussing 536 U.S. 101 (2002)). In that case, the plaintiff alleged that he suffered numerous discriminatory and retaliatory acts from the date he was hired through the date that he was terminated. *National R.R. Passenger Corp.*, 536 U.S. at 114. "The Court of Appeals applied the continuing violations doctrine to what it termed 'serial violations,' holding that so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are

plausibly or sufficiently related to that act may also be considered . . . ." *Id.* The Supreme Court reversed the appellate court's decision and held that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice,'" and that only those acts that occurred within the statutory filing deadline were actionable. *Id.* The Supreme Court concluded that "[a]ll prior discrete discriminatory acts [were] untimely filed and no longer actionable."[3] *Id.* at 115.

Defendant argues that the continuing violation theory is inapplicable to Plaintiff's failure to accommodate claim. Here, Plaintiff's claim regarding Defendant's denial of his accommodation request in July 2014 relates to an alleged discrete act of discrimination. Therefore, the Court concludes that Plaintiff's claim relating to his July

---

[3] However, the Supreme Court distinguished claims alleging individual acts of discrimination from hostile environment claims: "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Id.* Therefore, the Supreme Court held that for "the charge to be timely [regarding these hostile environment claims], the employee need only file a charge within 180 . . . days of any act that is part of the hostile work environment." *Id.* at 118. Therefore, the Supreme Court suggested in *National R.R. Passenger* that only hostile environment claims are subject to the continuing violation exception to the 180-day filing requirement.

2014 accommodation request is time-barred.[4] *See Windhauser v. Bd. of Supervisors for La. State Univ. & Agr. and Mech. Coll.*, 360 F. App'x 562, 566 n.5 (5th Cir. 2010) (finding that the continuing violation doctrine was inapplicable to the plaintiff's failure to accommodate claims pursuant to the Americans with Disabilities Act).

### 2. Second Accommodation Request

Plaintiff alleges that he made a second accommodation request, on August 11, 2014, that he not be required to climb ladders because of his diabetes and vertigo. Am. Compl. 2. Plaintiff alleges that Defendant also denied this accommodation request. *Id.* Defendant argues that (1) Plaintiff did not exhaust his administrative remedies for this claim because he did not include it in his charge of discrimination and (2) Defendant did not deny his accommodation request. Mot. 12–13.

Plaintiff has failed to produce any summary judgment evidence to support his claim that Defendant failed to accommodate his climbing

---

[4] The Court is cognizant that Plaintiff also claims that Defendant required him to work outside continuously despite being aware of his skin condition. These factual allegations, in addition to supporting his accommodation claim, similarly support his harassment claim, which the Court addresses in Section III.D *infra*. Significantly, the Court does not conclude that Plaintiff's harassment claim, based upon these same factual allegations, is time barred—only that his accommodation claim is untimely.

restriction. Significantly, during his deposition testimony, Plaintiff

indicated the opposite.

> Q. Is this document in Exhibit 16 the accommodation
> that you are talking about in your lawsuit? Because your
> lawsuit says, August 11th can't climb ladders. Page 7 of 10
> in Exhibit 16 says, No climbing ladders dated August 11,
> 2014.
> A. Yes.

Pl.'s Dep. 78.

> Q. Okay. I think you told me this, but —so you didn't
> have to climb laders after—
> A. No. . . .

Pl.'s Dep. 79

> Q. Okay. And when your doctor submitted this
> restriction for no climbing, no one ever told you you had to go
> climb a ladder?
> A. No.

Pl.'s Dep. 79–80

During his deposition, Plaintiff did testify that co-workers would

occasionally ask him for assistance in retrieving items from racks and

that he would inform them that he could not assist them because of his

climbing restriction. Pl.'s Dep. 80. Plaintiff testified that this made the

co-workers requesting assistance "upset." *Id.* However, Plaintiff

clarified that no one in a management or supervisory role requested or

required that he climb ladders and that he never actually did climb ladders after his accommodation request. *Id.* at 80–81.

Indeed, in his Response, Plaintiff solely addresses Defendant's argument that Plaintiff has not exhausted his administrative remedies. *See* Resp. 6–10. Plaintiff fails to address Defendant's argument that it granted Plaintiff's August 11, 2014, accommodation request regarding his climbing restriction.

Accordingly, the Court concludes that Plaintiff has failed to meet his summary judgment burden of going beyond the pleadings to "designate specific facts that show there is a genuine issue for trial," such that a reasonable jury could return a verdict in his favor regarding his second accommodation claim. *See Webb v. Cardiothracic Surgery Assoc. of N. Tex., P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).

## C. Retaliation Claim

"The TCHRA also prohibits an employer from retaliating or discriminating against a person who opposes a discriminatory practice, or makes or files a charge or complaint of discrimination." *Gallacher*, 2015 WL 1026473, at *3 (citing Tex. Lab. Code Ann. § 21.055). In his Amended Complaint, Plaintiff claims that Defendant retaliated against

him by discharging him and subjecting him to harassment because of his accommodation and FMLA leave requests. Am. Compl. 2–4.

To establish a prima facie case of retaliation pursuant to the TCHRA, a plaintiff is required to show that "(1)[he] engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action." *Gallacher*, 2015 WL 1026473, at *6. When "evaluating the 'causal link' element of a retaliation claim, courts consider: (1) the extent of the employee's disciplinary record; (2) whether the employer followed its policies and procedures in dismissing the employee; and (3) the temporal relationship between the protected action and the termination." *Id.*

Here, Plaintiff has failed to establish a causal nexus between his accommodation requests and his termination for the following reasons: (1) Plaintiff had three written coachings for poor work performance and absences in his disciplinary record—receiving all three coachings in the year prior to his termination; (2) Defendant followed its Coaching Policy, which sets forth its disciplinary procedures, in issuing written coachings to Plaintiff and terminating Plaintiff after his third written

coaching; and (3) Plaintiff requested accommodations in July 2014 and August 2014, but he was not terminated until almost four months later—demonstrating a weak temporal relationship between his accommodation requests and termination. *Cf. id.* at *7 ("When . . 'mere temporal proximity' between an employer's knowledge of protected activity and an adverse employment action is accepted as sufficient evidence of causation to establish a prima facie case of retaliation, the temporal proximity must be 'very close.' The relevant time frame for what is considered 'very close' varies, but . . . the Fifth Circuit [has] concluded that a gap of about two months and one week between the protected activity and the adverse action was insufficient to infer a causal link.") (citing *Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 401–402 (5th Cir. 2001)).

Moreover, Plaintiff has not produced evidence establishing that he would not have been discharged when he was had it not been for his accommodation requests and his disability. *See Univ. of Tex. Sw. Med. Ctr. v. Suanders*, No. 05-15-01543-CV, 2016 WL 3854231, at *3 (Tex. App.—Dallas July 13, 2016, pet denied) ("A plaintiff asserting a retaliation claim must establish that, in the absence of her protected

activity, the employer's prohibited conduct would not have occurred when it did."). Accordingly, the Court concludes that Plaintiff has failed to establish the causation element and, therefore, has failed to establish a prima facie case of retaliation pursuant to the TCHRA.

Again, even if Plaintiff had produced sufficient evidence to establish a prima facie case of retaliation, Defendant has proffered competent summary judgment evidence demonstrating that it had a legitimate non-discriminatory reason[5] for terminating Plaintiff: Plaintiff engaged in an unsafe work practice, resulting in his fourth coaching. Plaintiff has failed to adduce evidence to demonstrate that Defendant's proffered reason was pretext for unlawful retaliation. As Defendant points out, Plaintiff has failed to even address his retaliation claim in his Response. Therefore, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

---

[5] "Because the *McDonnell Douglas* approach is also applicable to retaliation claims, once a plaintiff establishes a prima facie case of retaliatory discrimination, the burden of production then shifts to the defendant to produce evidence of a legitimate non-retaliatory reason for its action." *Hagood*, 408 S.W.3d at 526.

## D. Harassment Claim

Finally, Plaintiff claims that Defendant harassed him based on his disability.[6] Am. Compl. 4.

To prove a disability-based harassment claim, a plaintiff must show that "(1)[he] has 'protected group' status; (2) [he] suffered unwelcome, disability-based harassment that affected a term, condition or privilege of employment; and (3) [his] employer knew or should have known about the harassment, but did not take prompt, remedial action." *LeBlanc*, 232 S.W.3d at 303.

"For workplace abuse to rise to the level of an actionable offense the disability-based harassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Id.* (quoting *Gowesky v. Singing River Hosp. Systems* 321 F.3d 503, 509 (5th Cir. 2003)). In determining whether the facts

---

[6] Neither party cites a Texas case discussing whether a disability-based harassment claim is viable under Texas law. *See LeBlanc v. Lamar State Coll.*, 232 S.W.3d 294, 303 (Tex. App.—Beaumont 2007, no pet.) (discussing a similar situation in which the plaintiff sought to bring a disability harassment claim pursuant to the TCHRA). However, at least one Texas Court of Appeals case has addressed the issue and has held that such a claim is viable pursuant to Texas law. *Id.* The Court concludes that even if such a claim is viable pursuant to the TCHRA, Plaintiff's claim fails on the merits.

alleged satisfy this burden, courts consider "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employees work performance." *Flowers v. S. Reg.'l Physician Serv.'s, Inc.*, 247 F.3d 229, 236 (5th Cir. 2001).

Consistent with his other claims, Plaintiff has similarly failed to specifically point the Court to any summary judgment evidence of workplace harassment on the basis of his disability, and fails to directly address his harassment claim in his Response. Based on the facts section of Plaintiff's Response to Defendant's Motion, the only factual allegations in support of Plaintiff's harassment claim that the Court can discern are the following: (1) Defendant required that Plaintiff work in the sun retrieving pallets and bikes knowing that he couldn't be exposed to the sun because of his vitiligo and (2) Plaintiff's managers informed him that he needed to be "100 percent at work from the start of his diabetic episodes until before his termination." Resp. 4–5.

Regarding Plaintiff's claim that Defendant required him to work in the sun despite his skin condition, Plaintiff does not direct the Court

to any evidence demonstrating that Defendant was aware of his skin condition when it required him to work outside or that Defendant required Plaintiff to work outside to harass him based on his disability and not because it was a part of his employment duties.[7]  Additionally, neither Plaintiff's Return to Work Certification form nor his Certification of Health Care Provider Form indicated that he could not work outside.  See Resp. Ex. J; Pl.'s Dep. Ex. 16.  Moreover, Plaintiff has failed to indicate the frequency that Defendant required him to work outside or whether he reported this alleged harassment and gave Defendant an opportunity to remedy it.  *See Shepard v. Comptroller of*

---

[7] Plaintiff does direct the Court to the deposition of Plaintiff's coworker Lorenzo Vega who testified during his deposition that Plaintiff informed him that he had a skin condition that made him "allergic" to the sun. Resp. Ex B, at 10–11.  Vega further testified that Plaintiff told him that Plaintiff's managers required him to work outside despite his skin condition.  *Id.* at 11.  However, this testimony is based upon hearsay statements made by Plaintiff.  Moreover, Vega does not possess the requisite firsthand knowledge to testify that Plaintiff informed Defendant about his skin condition or that Defendant required Plaintiff to work outside despite being aware of Plaintiff's skin condition. Plaintiff also directs the Court to Trejo's testimony that Defendant informed her of his skin condition on one occasion.  Resp. Ex. H, at 17. Trejo advised Plaintiff to inform his manager but testified that she was not aware of whether Plaintiff actually informed his manager regarding his condition.  *Id.*  Consequently, the Court concludes that Plaintiff has failed to adduce competent summary judgment evidence that Defendant was aware of Plaintiff's skin condition when it required him to work outside or that it did so to harass him based upon his disability.

*Pub. Accounts of Tex.*, 168 F.3d 871, 873 (5th Cir. 1999) (requiring that the plaintiff prove both that the defendant (a) knew of the harassment or in the exercise of reasonable care should have known of the harassment and (b) failed to take prompt remedial action).

Regarding Plaintiff's claim that his manager commented that he had to be "100 percent" productive, this single isolated comment is not sufficiently severe to constitute workplace harassment. This statement was a one-time occurrence and at worst considered merely offensive. Therefore, Plaintiff has failed to meet the high standard for disability-based harassment claims. *See Gowesky*, 321 F.3d at 509 ("The legal standard for workplace harassment in [the Fifth Circuit] is high . . . ."). Accordingly, the Court concludes that Defendant is entitled to summary judgment on Plaintiff's harassment claim.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff has failed to carry his summary judgment burden on all of his disability discrimination claims. Indeed, for most of his claims Plaintiff offered only "[u]nsubstantiated and subjective beliefs and conclusory allegations and opinions of fact," which do not constitute competent

summary judgment evidence. *Wilson v. Navika Capital Grp., LLC*, No. 4:10-CV-1569, 2014 WL 223211, at *8–10 (S.D. Tex. Jan. 17, 2014) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir.1998)). Plaintiff failed to direct the Court to competent summary judgment evidence to support his disability discrimination claims. "The [C]ourt is not required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment," and the Court has declined to do so here. *See id.* (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998)).

Accordingly, **IT IS ORDERED** that Defendant Wal-Mart Stores Texas, LLC's "Motion for Summary Judgment" (ECF No. 26) is **GRANTED**.

SIGNED this ___14___ day of **August, 2017**.

_____
PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE